STATE of Wisconsin, Plaintiff-Respondent,

v.

GARY M.B., Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–3393–CR. Oral argument October 7, 2003.—
Decided March 26, 2004.*

2004 WI 33

(Also reported in 676 N.W.2d 475.)

For the defendant-appellant-petitioner there were briefs by *T. Christopher Kelly* and *Kelly & Habermehl, S.C.*, Madison, and oral argument by *T. Christopher Kelly*.

For the plaintiff-respondent the cause was argued by *Jenifer E. Nashold*, assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager*, attorney general.

¶ 1. JON P. WILCOX, J. Petitioner, Gary M.B. (Gary), seeks a review of a published court of appeals decision, *State v. Gary M.B.*, 2003 WI App 72, 261 Wis. 2d 811, 661 N.W.2d 435, which affirmed his convictions for three counts of first-degree sexual assault of a child in Grant County Circuit Court, Robert P. VanDeHey, Judge.

## I. ISSUES

¶ 2. Two issues are presented for review. First, Gary contends that the circuit court erred in admitting three of his five prior convictions for impeachment purposes under Wis. Stat. § 906.09 (1999–2000).[1] In addition, the State raises the issue of whether Gary strategically waived his objection to the admission of his prior convictions by preemptively introducing this evidence during his direct examination. We hold that Gary did not strategically waive his objection to the introduction of this evidence. Further, we hold that the circuit court did not err in admitting Gary's prior convictions.

## II. FACTUAL BACKGROUND

¶ 3. On June 23, 1999, the State filed a criminal complaint charging Gary with three counts of first-degree sexual assault of a child. The State alleged that Gary had sexual contact with a child under the age of 13 during the years 1995, 1996, and 1997. The alleged victim was the daughter of Gary's wife. The alleged incidents occurred inside the apartment where all three resided. Many of the alleged incidents occurred when other family members were present in the apartment.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

The allegations arose in 1998, when the victim was residing with her natural father, following the death of her mother.

¶ 4. Prior to trial, defense counsel filed a motion in limine, requesting "a hearing be held as to the number of convictions or adjudications of delinquencies that would be used as to all witnesses and as to the defendant." Defense counsel did not file a memorandum of law relating to Gary's prior convictions or those of any other witness.

¶ 5. Gary had previously been convicted of five crimes. In 1973 he was convicted of uttering in Maine and received one-year probation. In 1975 he was convicted of disorderly conduct in Maine and received a fine. In 1977 Gary was convicted of assault in Maine and received a 30–day suspended jail term and probation. Gary was also convicted of domestic abuse in Iowa during 1991 and received a fine. Finally, Gary had another conviction in Iowa during 1991 for domestic abuse with a penalty enhancement and received one-year probation.

¶ 6. During the motion in-limine hearing, defense counsel objected to the introduction of the three oldest convictions. The following colloquy took place:

> Ms. Oliveto: Your Honor, we ask that the court not allow him to testify as to the convictions in the 1970's since it has been –'73, '75, and '77—since it has been quite some time since those had occurred. I don't believe they would go towards truthfulness. I realize Wisconsin law doesn't have it but the federal law does. One is assault and the other disorderly conduct, and the bank check happened almost 20 years ago. We ask that the court not allow that to be admitted against him.

> Mr. Everix: The consistent series of '73, '75, and '77, twice in '91 make it significant.
>
> Court: The law generally in Wisconsin doesn't follow the federal law. There is no exclusion for convictions more than 10 years old. Some of these are 27 years, 25 years, 23 years. But to the extent that there is I guess a presumption in the statute and the statute allows for prior convictions to be brought in because it does say something about the person's credibility, I will allow it.

Thus, the court ruled that all five of Gary's prior convictions could be used for impeachment purposes.

¶ 7. During Gary's direct examination, defense counsel asked him if he had ever been convicted of a crime and how many times. Gary answered "yes" and "five times." The State never discussed the issue of Gary's prior criminal record during the evidentiary phase of the trial. There was no physical evidence presented at trial regarding the allegations of sexual assault, and no witness actually observed the alleged assault. Simply put, this was a "he said, she said" case.

¶ 8. At closing argument, during rebuttal, the State brought up the issue of Gary's prior convictions as they related to his credibility. The prosecutor cautioned "use it only in terms of whether or not he is credible, not in terms of whether something else happened." The circuit court also gave a limiting instruction to the jury before deliberation regarding Gary's prior convictions.[2] After three hours of deliberation, the jury informed the

---

[2] The court stated: "Evidence has been received that the defendant, [Gary M.B.], has been convicted of crimes. This evidence was received solely because it bears upon the credibility of a defendant as a witness. It must not be used for any other purpose and particularly you should bear in mind that a criminal conviction at some previous time is not proof of guilt of the offense now charged."

69

court that it was deadlocked. The court then read Jury Instruction 520,[3] and 20 minutes later, the jury returned a verdict of guilty on all three counts.

## III. PROCEDURAL POSTURE

¶ 9. Gary appealed, arguing that the circuit court improperly admitted three of his five prior convictions. The State argued that Gary had strategically waived any objection because the defense preemptively introduced the prior convictions. The court of appeals rejected the State's strategic waiver argument, relying on *Vanlue v. State,* 87 Wis. 2d 455, 275 N.W.2d 115 (Ct. App. 1978), *rev'd on other grounds,* 96 Wis. 2d 81, 291 N.W.2d 467 (1980).[4] *Gary M.B.,* 261 Wis. 2d 811, ¶¶ 12–13. The court reasoned that "a pre-trial ruling permitting the introduction of prior conviction evidence effectively forces the defendant to introduce the evidence preemptively, and the defendant's introduction of

---

[3] Wis JI-Criminal 520, *Supplemental Instruction on Agreement,* provides:

> You jurors are as competent to decide the disputed issues of fact in this case as the next jury that may be called to determine such issues.

> You are not going to be made to agree, nor are you going to be kept until you do agree. It is your duty to make an honest and sincere attempt to arrive at a verdict. Jurors should not be obstinate; they should be open-minded; they should listen to the arguments of others, and talk matters over freely and fairly, and make an honest effort to come to a conclusion on all of the issues presented to them.

> You will please retire again to the jury room.

[4] In overruling the court of appeals' decision in *Vanlue,* this court did not address the court of appeals' application of the strategic waiver doctrine. *Vanlue v. State,* 96 Wis. 2d 81, 96, 291 N.W.2d 467 (1980).

the evidence should not therefore constitute a waiver of his or her prior objection to its admissibility." *Id.*, ¶ 18. In responding to the State's argument that the harm to Gary was too speculative to be considered on appeal because the State could have chosen not to introduce the number of prior convictions, the court ruled that it made no difference who introduced the evidence because "[o]nce the court ruled that all five convictions were admissible for impeachment purposes, it was reasonable for Gary to assume that the State would elicit the number of his convictions on cross-examination." *Id.*, ¶ 21.

¶ 10. Regarding the admissibility of Gary's prior convictions, the court of appeals held that the circuit court erroneously exercised its discretion in failing to balance the probative value of the three oldest convictions to which Gary objected against the danger of unfair prejudice. *Id.*, ¶ 27. Further, the court of appeals declined to independently review the record for evidence supporting the circuit court's ruling because "there were no evidentiary proceedings [ ]and only very brief argument[ ] on the issue . . .[,]" such that it could not conclude that the circuit court would have reached the same result if the circuit court had engaged in the balancing test. *Id.* However, the court of appeals nonetheless affirmed the circuit court after utilizing a harmless-error analysis. *Id.*, ¶¶ 28, 40.

## IV. ANALYSIS

### A. Strategic Waiver

■■■

¶ 11. Under the doctrine of strategic waiver, also known as invited error, "[a] defendant cannot create his own error by deliberate choice of strategy and then ask

to receive benefit from that error on appeal." *Vanlue,* 87 Wis. 2d at 460–61. Thus, whether a defendant has strategically waived an objection is a question of law subject to de novo review. *See State v. Ruud,* 41 Wis. 2d 720, 726, 165 N.W.2d 153 (1969). One commentator has remarked that Wisconsin's strategic waiver rule:

> prevents a party from counterattacking with otherwise inadmissible evidence when he has deliberately chosen not to object with the aim of using the otherwise inadmissible evidence to his own advantage. . . . The flip side of this coin is that a party who *does* object to the use of inadmissible evidence by his opponent does not forgo his right to claim error on appeal merely because he makes an effort to use the same or similar evidence in a defensive fashion after he has failed in his effort to exclude the evidence.

1 Wigmore, *Evidence* § 15, at 733 n.3 (Tiller's rev. 1983)(emphasis in original) (citing *Vanlue,* 87 Wis. 2d at 460–62). Thus, there is a distinction between a party's use of objected to evidence for his own benefit and the use of such evidence purely for defensive purposes. *Id.,* § 18, at 836–38 & n.37 (citing *Vanlue,* 87 Wis. 2d at 460–62).

¶ 12. In *Ruud,* 41 Wis. 2d at 723, the defendant argued on appeal that certain statements given to police were not preceded by an adequate *Miranda*[5] warning. However, the defense had entered into a stipulation with the State regarding the admissibility of the statements at trial. *Ruud,* 41 Wis. 2d at 724. On appeal, the court noted that the defendant had made a "knowing election between alternative courses of action. Instead of making any attempt to attack the validity of the statement the defense, as a matter of strategy, chose to

---

[5] *Miranda v. Arizona,* 384 U.S. 436 (1966).

use it to support his theory of the case." *Id.* at 726. In such a circumstance, a defendant is estopped from claiming error. *Id.*

¶ 13. In contrast, in *Vanlue,* 87 Wis. 2d at 457–58, the defendant objected to the circuit court's ruling allowing the State to cross-examine him regarding the nature of two previous convictions. After his objection was overruled, the defendant introduced evidence relating to the nature of his prior offenses during his case-in-chief. *Id.* at 460. The State claimed that the defendant had strategically waived his objection because he made a knowing election to introduce the evidence in an attempt to lessen the prejudice against him. *Id.* at 460–61. In rejecting the State's argument, the court of appeals distinguished *Ruud, id.* at 461, and reasoned:

> When the defendant's objection was overruled, the evidence was going to be placed before the jury by the State. In order to lessen the prejudicial impact the evidence would have on the jury, the defense counsel had no choice but to offer the evidence himself. To decide whether to put the damaging evidence in or let the State put it in amounted to no election at all. There was no way this evidence could be used favorably by the defendant.

*Id.* at 462. The court concluded, "[s]ince Vanlue's counsel objected . . . it made no difference who placed the evidence before the jury. . . . There was no strategic waiver." *Id.*

¶ 14. *Vanlue* is directly on point with the present case. However, the State argues that we should overrule the court of appeals' holding in *Vanlue* regarding strategic waiver in light of *Ohler v. United States,* 529 U.S. 753 (2000); and *State v. Frank,* 2002 WI App 31, 250 Wis. 2d 95, 640 N.W.2d 198.

73

¶ 15. In *Ohler,* 529 U.S. at 755, the United States Supreme Court addressed whether, under federal law, a defendant waives her right to challenge an in-limine ruling, allowing the use of prior crimes for impeachment purposes, when the defendant introduces the evidence during her direct examination. The Court utilized the rule that when a party objects to evidence of a certain fact and then introduces evidence of that fact through its own witness, the party has waived its objection. *Id.* The Court held that when a defendant objects to an in-limine ruling and that objection is overruled, the defendant's preemptive introduction of the evidence at trial constitutes waiver. *Id.* at 760. The court reasoned that because both parties must make tough choices at trial, there is nothing unfair about putting a party to its choice, and any harm flowing from the in-limine ruling would be wholly speculative after the defendant preemptively introduced the evidence. *Id.* at 757–59.

¶ 16. In *Frank,* 250 Wis. 2d 95, ¶¶ 1–3, a decision subsequent to *Ohler,* the defendant, charged with sexual contact with a child under the age of 13, objected to the State's in-limine motion to introduce other acts evidence. The defendant thereafter entered into a *Wallerman*[6] stipulation, whereby he conceded intent and motive to avoid introduction of the other acts evidence. *Id.,* ¶¶ 3–6. On appeal the defendant challenged the circuit court's ruling on the in-limine motion. *Id.,* ¶ 1. The court of appeals held that the defendant could not challenge the in-limine ruling because, due to the *Wallerman* stipulation, the other acts evidence was never introduced. *Id.,* ¶ 15. In so

---

[6] *State v. Wallerman,* 203 Wis. 2d 158, 167–68, 552 N.W.2d 128 (Ct. App. 1996).

holding, the court of appeals relied heavily upon the Court's rationale in *Ohler* that a defendant cannot claim error based on a choice made at trial. *Id.,* ¶¶ 13–15. However, the court's reliance on *Ohler* in *Frank* was not necessary to its holding. The court of appeals correctly stated that error cannot be assigned to an in-limine ruling when the evidence is never introduced at trial. *Frank,* 250 Wis. 2d 95, ¶ 9.

¶ 17. This court is not bound to follow *Ohler.* As the court of appeals noted in the instant case, Wisconsin courts are not bound by decisions of the United States Supreme Court when federal law does not govern the dispute. *Gary M.B.,* 261 Wis. 2d 811, ¶ 11 (citing *State v. King,* 205 Wis. 2d 81, 93, 555 N.W.2d 189 (Ct. App. 1996)). Further, while decisions of the Supreme Court interpreting the Federal Rules of Evidence may be persuasive authority, they are not binding on this court. *State v. Blalock,* 150 Wis. 2d 688, 702, 442 N.W.2d 514 (Ct. App. 1989). *Ohler* involved a judicial formulation of the strategic waiver rule to be used in federal courts; the Court's ruling did not involve a question of federal constitutional law or a construction of the Federal Rules of Evidence. The Court's formulation of the strategic waiver rule in *Ohler* is contrary to the approach Wisconsin courts have utilized. Finally, as the dissent recognized in *Ohler,* the majority's holding is against the great weight of academic authority. *See Ohler,* 529 U.S. at 762–63 (Souter, J., dissenting) (collecting authority).

¶ 18. The present case is distinguishable from both *Ruud* and *Frank.* Unlike the defendant in *Ruud,* Gary did object to the use of the disputed evidence. Further, Gary did not introduce the evidence himself in

order to further his theory of the case. Unlike the defendant in *Frank,* Gary was not successful in preventing the jury from hearing the objectionable testimony. Gary did nothing more than follow what the court of appeals recognized as " '*the usual trial strategy* of raising the issue of defendant's prior convictions on the premise that this approach is less damaging than if the prosecutor raises the issue first.' " *Gary M.B.,* 261 Wis. 2d 811, ¶ 22 (emphasis added, quoting *State v. Pitsch,* 124 Wis. 2d 628, 631, 369 N.W.2d 711 (1985)). Therefore, we conclude that the court of appeals' formulation of the strategic waiver doctrine in *Vanlue* was correct and hold that under Wisconsin law, a defendant does not commit strategic waiver when he unsuccessfully objects to the introduction of evidence and preemptively introduces the evidence in an attempt to mitigate its prejudicial effect.

B. Admission of Prior Convictions

¶ 19. It is within the discretion of the circuit court to determine whether to admit evidence of prior convictions for impeachment purposes under Wis. Stat. § 906.09. *State v. Kruzycki,* 192 Wis. 2d 509, 525, 531 N.W.2d 429 (Ct. App. 1995). This court will affirm a circuit court decision to admit evidence of prior convictions if the circuit court properly exercised its discretion, regardless of whether we would have made the same ruling. *Id.* In general, "[a] court properly exercises its discretion when it correctly applies accepted legal standards to the facts of record and uses a rational process to reach a reasonable conclusion." *Id.* We conclude that although the circuit court did not explicitly set forth its reasoning on the record, it implicitly balanced the probative value of the evidence against the

danger of unfair prejudice and thus properly exercised its discretion in admitting the prior convictions.

¶ 20. Wisconsin Stat. § 906.09 governs the admission of prior criminal convictions for the purposes of impeaching a witness' character for truthfulness.[7] Wisconsin Stat. § 906.09 provides, in pertinent part:

> (1) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible. The party cross-examining the witness is not concluded by the witness's answer.
>
> (2) Exclusion. Evidence of a conviction of a crime or an adjudication of delinquency may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

¶ 21. Under § 906.09, any prior conviction is relevant to a witness' character for truthfulness because Wisconsin law presumes that criminals as a class are less truthful than persons who have not been convicted of a crime. *Kruzycki,* 192 Wis. 2d at 524; 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 418 (2d ed. 2001).[8] The exclusion in § 906.09(2) is "a particularized application" of the balancing test in Wis. Stat. § 904.03. Judicial Council Committee Note, 1974, § 906.09, Stats. In considering

---

[7] *See* 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 415 n.1 (2d ed. 2001) (noting that the rule is not directed at credibility but, "[m]ore correctly . . . is aimed at credibility through an inference from the witness' character for truthfulness").

[8] *See also State v. Smith,* 203 Wis. 2d 288, 295, 553 N.W.2d 824 (Ct. App. 1996).

whether a conviction should be excluded under the balancing test, the circuit court should consider:

> whether from the lapse of time since the conviction, the rehabilitation or pardon of the person convicted, the gravity of the crime, the involvement of dishonesty or false statement in the crime . . . , the probative value of the evidence of the crime is substantially outweighed by the danger of undue prejudice.

Judicial Council Committee Note, 1974, § 906.09, Stats.[9] *See also State v. Kuntz,* 160 Wis. 2d 722, 752, 467 N.W.2d 531 (1991); *Kruzycki,* 192 Wis. 2d at 525. Further, when there are multiple prior convictions, a

---

[9] The State suggested that there is some confusion over whether these factors are merely elements to be considered in determining the degree to which the probative value is outweighed by the danger of unfair prejudice or whether the balancing test is a separate factor. In fact, Gary states in his brief that the degree to which the probative value is outweighed by the danger of unfair prejudice is a fifth factor. On the contrary, as the Judicial Council Committee Note makes clear, the enumerated factors are elements to be considered under this particularized application of the § 904.03 balancing test. "[A] judge should consider whether from [the listed factors] the probative value of the evidence of the crime is substantially outweighed by the danger of undue prejudice." Judicial Council Committee Note, 1974, § 906.09, Stats. Also, in *State v. Kuntz,* 160 Wis. 2d 722, 753, 467 N.W.2d 531 (1991), the court, after discussing some of the aforementioned factors, stated, "[n]one of the other prejudicial factors to be considered apply to this case." Thus, the listed factors are merely elements to be considered when applying the "particularized application" of the § 904.03 balancing test under § 906.09(2). *See State v. Smith,* 203 Wis. 2d at 296 (noting that "[t]hese factors are weighed in a balancing test to determine whether the probative value of the prior conviction evidence 'is substantially outweighed by the danger of unfair prejudice' ") (quoting Wis. Stat. § 906.09(2) (1993–94)).

circuit court should also consider the frequency of the convictions. *See Nicholas v. State,* 49 Wis. 2d 683, 688, 183 N.W.2d 11 (1971)(noting that "the more often one has been convicted, the less truthful he is presumed to be").[10]

¶ 22. Gary contends that the court of appeals correctly determined that the circuit court failed to exercise its discretion in admitting three of his previous convictions because it failed to perform the balancing test. We disagree. The first question in reviewing a discretionary determination is whether the circuit court applied the correct legal standard. As noted by the court in *Kuntz,* 160 Wis. 2d at 750, "[t]he Wisconsin Rules of Evidence, as a general rule, permit evidence of conviction of a crime to attack the credibility of a witness." Unlike Wis. Stat. § 904.04, which presumes other act evidence is inadmissible, subject to certain exceptions, the circuit court was correct in stating that § 906.09 presumes that evidence of prior convictions is admissible to attack a witness' credibility.

¶ 23. Further, the circuit court was correct that under Wisconsin law, all prior convictions are relevant to a witness' character for truthfulness. *See State v. Smith,* 203 Wis. 2d 288, 294–95, 553 N.W.2d 824 (Ct. App. 1996). Under Wisconsin law:

> The crimes need not have any relevance to a person's character for truthfulness[, and] it is not necessary to directly link the nature of the offense with the character trait for truthfulness; the link is provided by the

---

[10] Daniel D. Blinka, *Evidence of Character, Habit and "Similar Acts" in Wisconsin Civil Litigation,* 73 Marq. L. Rev. 283, 292 & n.29 (1989) (citing *Nicholas v. State,* 49 Wis. 2d 683, 688, 183 N.W.2d 11 (1971)).

> fact of conviction [because] Wisconsin law . . . embodies
> the idea that persons who have been convicted of
> crimes are as a class less worthy of belief than those
> who have no criminal record.

7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 417–18 (2d ed. 2001). Finally, the circuit court was correct that Wisconsin law does not follow the federal rule, which bars convictions more than ten years old. *See* Judicial Council Committee Note, 1974, § 906.09, Stats. In short, this case is not one, such as *Smith,* 203 Wis. 2d at 296–98, where the circuit court misapplied the law.

¶ 24. As the circuit court utilized the correct legal standards, the next inquiry then is whether the circuit court employed a rational process to reach a reasonable conclusion in conducting the balancing test. We note that the trial record is admittedly sparse. The circuit court's decision constitutes no more than four sentences. However, defense counsel's motion in limine is equally sparse. The motion merely asked for a hearing to determine the number of prior convictions to be admitted against Gary. The motion did not specifically identify what was the danger of unfair prejudice with regard to each conviction and why the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. At the hearing, defense counsel objected only on the grounds that three of the convictions were old and did not bear on truthfulness. We review the circuit court's determination in light of the actual objections defense counsel raised. *See State v. Pharr,* 115 Wis. 2d 334, 347, 340 N.W.2d 498 (1983) (noting that "defense counsel failed to specify the nature of the unfair prejudice or to pursue the matter

further when the court made its ruling, and this contributed to the inadequacy of the record").[11]

¶ 25. While the *Kruzycki* decision presents an example of a proper exercise of discretion under § 906.09, there are few published cases that provide guidance as to what constitutes an improper exercise of discretion under § 906.09. However, as the exclusion under § 906.09 is a "particularized application" of § 904.03, we may look to decisions involving the latter statute for guidance.

¶ 26. We begin by noting the circuit court's failure to use the words "balancing," "probative value," or "prejudicial effect" is not determinative.

> The fact that the trial court did not expressly state the name of sec. 904.03, Stats., or use the words "weighing" or "balancing" or some similar word or words to describe its analysis, does not mean that the court failed to exercise its discretion. We do not recognize such a "magic words" argument.

*State v. Lindh,* 161 Wis. 2d 324, 361 n.14, 468 N.W.2d 168 (1991) (noting that the court's failure to use these words, at most, constitutes a failure to set forth its reasoning). Further, in conducting our analysis, if a circuit court does not explicitly engage in balancing on the record, an appellate court can nevertheless affirm, if the record indicates that balancing is implicit from the circuit court's determination. *See Lindh,* 161 Wis. 2d at 361 n.14; *State v. Rutchik,* 116 Wis. 2d 61, 74, 341

---

[11] We note that with regard to another witness, counsel's objection to his prior convictions consisted of the following: "The '74 one he was under the age of 18. We recognize the Wisconsin law but it has been some time ago."

N.W.2d 639 (1984); *Pharr,* 115 Wis. 2d at 347; *State v. Locke,* 177 Wis. 2d 590, 598–99, 502 N.W.2d 891 (Ct. App. 1993).[12]

¶ 27. Here, defense counsel objected to the three oldest convictions on the grounds that they were stale and bore no relation to the witness' credibility. The prosecutor responded, "[t]he consistent series of '73, '75, and '77, twice in '91 make it significant." As noted *supra,* when multiple convictions are present, part of the balancing test involves consideration of the repetitive nature of the convictions over a period of time. While the circuit court did not expressly agree with the prosecutor's argument on the record, its decision exhibits implicit agreement. As the court in *Lindh* noted, when examining a circuit court's exercise of discretion, "the appellate court should conclude that the trial court relied on the considerations expressed by the prosecutor as grounds for the court's ruling, where the court obviously acquiesced in the prosecutor's explanation, but did not expressly articulate all of its reasoning itself." *Lindh,* 161 Wis. 2d at 364. While Gary, in his briefs before this court, makes a lengthy argument that his prior convictions do not constitute a "pattern," counsel never made this argument to the circuit court during the hearing on this matter; nor did he argue that

[12] Gary argues that such independent review is prohibited under *Barrera v. State,* 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980). *Barrera* does not stand for this proposition. In *Barrera,* we concluded that the court of appeals erred in making its own determination regarding the admission of other convictions instead of reviewing the circuit court's exercise of discretion. *Id.* The court in *Barrera* specifically concluded that the record in the case before it supported the circuit court's determination. *Id.*

Gary had been "rehabilitated" with respect to the three convictions from the 1970s.[13]

¶ 28. We also note that, contrary to defense counsel's statement at trial, Gary's 1973 uttering conviction is a crime that does, in fact, involve dishonesty. While Gary is correct that "petty crimes [such as disorderly conduct] seemingly lose whatever value they possess in a much shorter period of time[,]" 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 419 (2d ed. 2001), it is equally true that "[w]here the witness has multiple convictions, the gap between the date of the testimony and the oldest offense on the record should be assessed in light of the intervening crimes, which belie an inference that the individual has 'changed.' " *Id.* Thus, Gary's 1973 conviction for uttering, which bears directly on truthfulness, must also be assessed in light of his subsequent 1975 disorderly conduct conviction, 1977 assault conviction, and two convictions for domestic abuse in 1991. We therefore conclude that the circuit court's decision displays that the court adopted the prosecutor's argument that "[t]he consistent series of '73, '75, and '77, twice in '91 make it significant."

¶ 29. Moreover, even if the circuit court did not expressly state on the record that it considered the possible danger of unfair prejudice, the fact that the court gave a limiting instruction "can reveal that the trial court considered the possibly prejudicial nature of such evidence and was seeking to ensure that it was properly utilized by the jury in reaching its verdict." *State v. Johnson,* 121 Wis. 2d 237, 253–54, 358 N.W.2d

[13] *See Whitty v. State,* 34 Wis. 2d 278, 290, 149 N.W.2d 557 (1967) (noting that "[t]his court has not looked with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel").

824 (Ct. App. 1984)(finding the circuit court's use of a limiting instruction was sufficient to conclude that the circuit court had implicitly performed the § 904.03 balancing test). *See also Pharr,* 115 Wis. 2d at 348 (noting that the use of a cautionary instruction demonstrates "that the trial court had considered the possibly prejudicial nature of [such] evidence and was seeking to ensure that the evidence was used properly by the jury in reaching its verdict"). The circuit court in the instant case did, in fact, issue a limiting instruction to the jury regarding the evidence of prior convictions.[14] Thus, we can conclude that in admitting the evidence, the circuit court considered the danger of unfair prejudice of the evidence. Therefore, we conclude that the circuit court, considering the two factors objected to by the defendant, implicitly balanced the probative value of the convictions against the danger of unfair prejudice.

¶ 30. While there is no evidence that the circuit court considered the other factors that defense counsel did not mention, we will not find error predicated upon the circuit court's failure to address factors not brought to its attention by defense counsel. The court in *Kuntz,* 160 Wis. 2d at 753, stated that in conducting the § 906.09 balancing test, the circuit court need not

---

[14] The court specifically stated: "[The evidence of prior convictions] must not be used for any other purpose *and particularly you should bear in mind that a criminal conviction at some previous time is not proof of guilt of the offense now charged.*" (Emphasis added.) One commentator has noted that "[i]t would appear that the 'unfair prejudice' specified in the rule refers to the danger that the jury might use the evidence . . . .[to] conclude that the defendant is guilty because he is a 'criminal.'" 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 418 (2d ed. 2001).

consider factors that do not apply to the case.[15] As noted *supra,* § 906.09 presumes evidence of prior convictions is admissible, and it is not necessary to link the crime to the witness' character trait for truthfulness. Thus, the onus is on defense counsel to articulate the relevant balancing test factors and discuss why the probative value of the particular convictions is substantially outweighed by the danger of unfair prejudice. *See Whitty v. State,* 34 Wis. 2d 278, 290, 149 N.W.2d 557 (1967) (noting that "[t]he primary duty of trying a lawsuit is upon trial counsel, not the trial judge"). Here, the circuit court did consider the factors articulated by defense counsel.

¶ 31. Both of the dissents in their harmless error analyses provide an accurate summary of why the admission of Gary's five prior convictions was prejudicial to his case. However, before "prejudice" can be considered in the context of a harmless error analysis, the circuit court must first be found to have erred in admitting the evidence. To that extent, prior convictions cannot be excluded merely because they are prejudicial; rather, their probative value must be "substantially outweighed by the danger of unfair prejudice," Wis. Stat. § 906.09(2). As noted *supra,* the exclusion in § 906.09(2) is "a particularized application" of the balancing test in § 904.03. As this court has previously stated in the context of § 904.03:

Unfair prejudice results when the proffered evi-

---

[15] In the context of § 904.03, courts have repeatedly stated that a circuit court need not engage in balancing when defense counsel does not raise the objection or specifically request the court to engage in balancing. *See, e.g., McClelland v. State,* 84 Wis. 2d 145, 157–58, 267 N.W.2d 843 (1978); *State v. Gollon,* 115 Wis. 2d 592, 604–05, 340 N.W.2d 912 (Ct. App. 1983) (citing *Whitty v. State,* 34 Wis. 2d 278, 294–95, 149 N.W.2d 557 (1967)).

dence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*State v. Sullivan,* 216 Wis. 2d 768, 789–90, 576 N.W.2d 30 (1998).

¶ 32. Neither dissent has explained how allowing Gary to state he had five prior convictions rather than two unfairly prejudiced his case or how that unfair prejudice substantially outweighed the probative value of the extra convictions, such that the failure to exclude these three convictions would constitute error in the first instance. Here, the jury was not provided with any additional information regarding Gary's prior convictions; they were not told the nature of his crimes or even when they occurred. Unlike gruesome photos from the scene of a crime, a witness stating the number five cannot possibly arouse the jury's sense of horror, provoke its instinct to punish, or appeal to its sympathies. The only "unfair prejudice" that could arguably result is that the jury may conclude the defendant is guilty because he is a "criminal." *See* 7 Daniel Blinka, *Wisconsin Practice: Wisconsin Evidence* § 609.1, at 418 (2d ed. 2001).

■

¶ 33. However, while the prosecutor in closing argument did stress Gary's prior convictions in relation to his credibility, he specifically told the jury that the prior convictions could be used only to assess Gary's credibility. More importantly, the circuit court gave a precise limiting instruction cautioning the jury that Gary's prior convictions could be used only to assess his credibility and could not be used to determine he

committed the charged offenses. When a circuit court gives a proper cautionary instruction, appellate courts presume that the jury followed that instruction and acted in accordance with the law. *State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990); *State v. Pitsch,* 124 Wis. 2d 628, 644 n.8, 369 N.W.2d 711 (1985); *State v. Leach,* 124 Wis. 2d 648, 673, 370 N.W.2d 240 (1985); *State v. Adams,* 221 Wis. 2d 1, 12–13, 584 N.W.2d 695 (Ct. App. 1998).

¶ 34. As noted *supra,* the trial in this case was essentially a swearing contest, pitting the credibility of Gary against that of the victim. It is the duty of the jury to determine a witness' credibility. Wis JI-Criminal 300. The jury was entitled to consider Gary's prior convictions when assessing his character for truthfulness and to find him less credible because of those convictions. That is the entire point of allowing prior convictions to be admitted. In light of the circuit court's limiting instruction, which prevented the jury from utilizing the prior convictions for an impermissible purpose, and despite the circuit court's failure to explicitly engage in balancing on the record, we cannot say that allowing Gary to testify that he had five prior convictions rather than two unfairly prejudiced his case such that the circuit court erred in admitting the convictions.

¶ 35. Having reviewed the record in light of defense counsel's objections, the prosecutor's response, and the court's use of a limiting instruction, we hold that the circuit court did not erroneously exercise its discretion in admitting Gary's three oldest prior convictions because the circuit court implicitly balanced the probative value of this evidence against the danger of unfair prejudice. We note that in the future, it would be prudent for circuit courts to explicitly set forth their

reasoning in ruling on § 906.09(2) matters in order to demonstrate that they considered the relevant balancing factors applicable in the case before them. Nonetheless, the record before us contains enough evidence that the circuit court implicitly balanced the probative value of Gary's prior convictions against the danger of unfair prejudice such that we cannot say the circuit court erroneously exercised its discretion in admitting the convictions. Although the court of appeals concluded that error had occurred, it ultimately concluded that the error was harmless. *Gary M.B.,* 261 Wis. 2d 811, ¶¶ 27, 40. Thus, with regard to the issue of Gary's prior convictions, we affirm the court of appeals, although on a different basis.

## V. SUMMARY

¶ 36. We hold that under Wisconsin's formulation of the strategic waiver doctrine, Gary did not strategically waive his objection to the introduction of evidence regarding his prior convictions simply because he preemptively introduced this evidence after losing his objection. Further, we hold that the circuit court did not erroneously exercise its discretion in admitting Gary's three oldest prior convictions for impeachment purposes because we conclude that the circuit court implicitly balanced the probative value of the evidence against the danger of unfair prejudice.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37. N. PATRICK CROOKS, J. *(concurring).* I agree with the majority opinion that the court of appeals' decision to uphold the conviction of Gary M.B should be affirmed. However, I write to express my

88

opinion that this case is more appropriately decided under a harmless error analysis.

¶ 38. The majority uses a balancing test to determine if the circuit court erred in allowing Gary M.B.'s three older convictions to be admitted into evidence, along with two more recent ones. *See* majority op., ¶ 19. The majority concludes that in admitting the evidence, the circuit court correctly considered the frequency of Gary's convictions and the possibility that admitting the evidence would cause unfair prejudice, which would substantially outweigh the probative value. *See* Majority op., ¶ 31. Additionally, the majority reasons that the burden is on the defense counsel to state the relevant factors of the balancing test and discuss why these factors would cause such unfair prejudice. *See* majority op., ¶ 30. The majority also contends that error will not be predicated upon the circuit court's failure to consider factors not brought to its attention by the defense counsel. *Id.*

¶ 39. Under a harmless error analysis, an "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *State v. Harvey,* 2002 WI 93, ¶¶ 49, 51, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999)). While a reviewing court may initially focus on the error itself when conducting a harmless error analysis, the error should be evaluated in the context of the entire circumstances that are present. *State v. Tucker,* 2003 WI 12, ¶ 26, 259 Wis. 2d 484, 657 N.W.2d 374. Thus, an error that has some probative value, but is not a significant part of the case, may be deemed harmless. *See State v. Weed,* 2003 WI 85, ¶ 31, 263 Wis. 2d 434, 666 N.W.2d 485.

¶ 40. Applying a harmless error analysis to the case at hand, it is evident that any error in admitting

evidence of Gary M.B.'s five prior convictions, as opposed to the two defense counsel argued for, was not outcome determinative. In its opinion in this case, the court of appeals stated, "once a jury is apprised of a witness's past criminal conduct, evidence of the exact number of the witness's prior convictions will rarely be outcome determinative." *State v. Gary M.B.*, 2003 WI App 72, ¶ 34, 261 Wis. 2d 811, ¶ 34. I agree with that court's analysis. Gary's credibility would have been questioned by the jury based on these two convictions alone. The jurors would have doubted Gary's credibility, based on his prior criminal history and would have reached the same verdict. The difference between two convictions and five is not significant enough to have affected the jury's verdict. *State v. Bowie*, 92 Wis. 2d 192, 204–06, 284 N.W.2d 613 (1979).

¶ 41. In *Bowie*, we stated that the jury is not given special instructions to consider the number of convictions. *Id.* at 205. In the case at hand, the State rarely made mention of the fact that Gary had five prior convictions. This suggests that the exact number of convictions played an insignificant role in the State's case. I agree with the court of appeals that the circuit court's cautionary instruction to the jury focused the jurors' attention on Gary's past criminal conduct, not the exact number of convictions. *Gary M.B.*, 261 Wis. 2d 811, ¶ 34. The majority spends a good deal of time articulating a balancing test that it claims the circuit judge implicitly applied in this case. A harmless error analysis provides a much more straightforward, and in my opinion more persuasive, framework and would yield the same result.

¶ 42. In this case, while not conceding that there was error, consistent with the harmless error rule enunciated in the *Neder* and *Harvey* decisions, "it is

clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error" alleged. *State v. Harvey,* 2002 WI 93, ¶¶ 49, 51, 254 Wis. 2d 442, 647 N.W.2d 189.

¶ 43. For the foregoing reasons I respectfully concur.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the majority opinion that Gary M.B. did not strategically waive his objection to the introduction of his prior convictions.[1] I also agree that the circuit court has the discretion to determine whether to admit evidence of prior convictions for impeachment purposes under Wis. Stat. § 906.09.[2] After that, the majority opinion and I part ways.

¶ 45. Three justices (Justices Wilcox, Prosser, and Roggensack) join the lead opinion, concluding that this case does not involve an erroneous exercise of discretion. The concurring justice (Justice Crooks) takes no

---

[1] Majority op., ¶ 18.

The majority opinion appears to characterize the court of appeals decision in *Vanlue* as persuasive. *See* majority op., ¶ 13–14. The court of appeals in the present case viewed its decision in *Vanlue* as precedential and binding because this court on review of *Vanlue* did not address the court of appeals' application of the strategic waiver doctrine. *Vanlue v. State,* 87 Wis. 2d 455, 275 N.W.2d 115 (Ct. App. 1978), *rev'd on other grounds,* 96 Wis. 2d 81, 291 N.W.2d 467 (1980).

While the court of appeals apparently treats all or parts of its decisions as precedential even after this court has reviewed them, the question of the precedential value of a court of appeals decision that has been reviewed by this court has not been decided by this court. My own view at this time is that when this court reviews a decision of the court of appeals, the court of appeals decision no longer has precedential value.

[2] Majority op., ¶ 19.

position on whether there was error, but concludes that if there were error it was harmless. Three justices (Chief Justice Abrahamson and Justices Bradley and Sykes) conclude that the circuit court erroneously exercised its discretion and that the error was prejudicial.

¶ 46. I disagree with the majority opinion and the concurring opinion for two reasons: First, the majority opinion eviscerates the notion that a circuit court's exercise of discretion requires a meaningful process of reasoning demonstrated on the record and drastically expands the scope of the independent appellate review doctrine beyond what has been previously recognized in this state. Second, the concurring opinion's conclusion that any error in this case was harmless ignores the relevant standard for evaluating harmless error claims and eviscerates this court's formulation of the "counting rule" for admitting prior convictions as evidence at trial.

I

¶ 47. I conclude that in this case the circuit court judge did not properly exercise discretion in admitting the three prior convictions. This court has frequently explained that "[a] discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purposes of achieving a reasoned and reasonable determination."[3]

---

[3] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶ 48. The purposes of requiring a circuit court to perform this process on the record are many. The process increases the probability that a circuit court will reach the correct result, provides appellate courts with a more meaningful record to review, provides the parties with a decision that is comprehensible, and increases the transparency and accountability of the judicial system.

¶ 49. That said, I recognize that no record is perfect, however diligent circuit courts may be in their efforts to explain their decisions. Circuit courts will sometimes fail to explain their decisions fully, not because of incompetence or carelessness, but because the requirements of circuit court judges are boundless and the resources available to meet those demands are few.

¶ 50. Recognizing these facts, appellate courts can provide assistance to circuit courts. An appellate court may independently review a record and uphold a circuit court's exercise of discretion where at least the foundation of an explanation have been laid, even if the circuit court has not stated all of the facts, stated all of the law, and fully demonstrated the rational mental process to connect the two.

¶ 51. In this case, however, the foundation is missing. The majority opinion exercises its discretion when the circuit court has failed to do so as the law requires. After this decision, I am concerned that the exercise of discretion no longer requires a "rational mental process," no longer requires that the facts and law relied upon be "stated," and no longer requires that a "reasonable determination" be made on the record by a circuit court. Instead this court acts as both the initial decision maker and reviewing court.

¶ 52. I turn now to examine the facts of this case and the circuit court's decision to admit the evidence in question.

¶ 53. The State sought to introduce five prior convictions of the defendant, which are as follows:

- 1973 State of Maine. Uttering or insufficient funds; suspended sentence; 1 year probation.

- 1975 State of Maine. Disorderly conduct; fine.

- 1977 State of Maine. Assault; 30 days jail suspended, probation.

- 1991 State of Iowa. Assault, domestic; fine.

- 1991 State of Iowa. Domestic abuse; 2 days jail suspended, one year probation.

¶ 54. I begin by reprinting the transcript of the motion in limine held between the circuit court and counsel regarding the admission of the defendant's five prior convictions:

COURT: There was a discussion about witnesses with prior convictions. Mr. Everix.

MR. EVERIX: Mr. Bassett's record in Main[e] and in the State of Iowa, in 1973 was uttering or insufficient funds. It says suspended, one year probation, in the District Court for Bath, Main[e]. In September of '75, disorderly conduct. Paid a fine through the District Court of Augusta, Maine. 1977, assault, 30 days in jail, suspended probation, Lewiston, Maine; and also a record out of the State of Iowa I believe in—I think it was in 1991, domestic disorderly conduct, and in the same year there was an enhancer for domestic disorderly conduct. I'm trying to find that teletype.

February 23 of '91, domestic abuse, assault—charge was assault, domestic abuse. Sentenced on

March 4 of '91, guilty, and paid a fine at that time; and on October 24 of '91 also found guilty of domestic abuse with a penalty enhancement, two days, suspended, one year probation with assault class. So I believe that there are five convictions during an extended period of time.

MS. OLIVETO: Your Honor, we ask that the court not allow him to testify as to the convictions in the 1970's since it has been—'73,'75, and '77—since it has been quite some time since those had occurred. I don't believe they would go towards truthfulness. I realize Wisconsin law doesn't have it but the federal law does. One is assault and the other disorderly conduct, and the bank check happened almost 20 years ago. We ask that the court not allow that to be admitted against him.

MR. EVERIX: The consistent series of '73, '75, and '77, twice in '91 make it significant.

COURT: The law generally in Wisconsin doesn't follow the federal law. There is no exclusion for convictions more than 10 years old. Some of these are 27 years, 25 years, 23 years. But to the extent that there is I guess a presumption in the statute and the statute allows for prior convictions to be brought in because it does say something about the person's credibility, I will allow it.

¶ 55. This concluding paragraph presents the only analysis of the circuit court in deciding to admit the three contested convictions. Of the four sentences the judge articulated on the subject, the first two sentences merely reiterate that Wisconsin law differs from federal law in that there is no bar on the admission of convictions more than 10 years old. The third sentence simply states the number of years that had elapsed since the defendant had been convicted of those

95

offenses. Thus, it is the concluding sentence of the circuit court judge on this issue that sets forth the sole reasoning behind the admission of the convictions. It is this sentence, therefore, that should guide the court in determining whether the circuit court properly exercised its discretion in admitting the prior convictions.

¶ 56. I agree with the majority opinion that even though all prior convictions are relevant under Wisconsin law because the convictions speak to a witness's truthfulness,[4] circuit courts are nevertheless required, in determining whether to admit or exclude prior convictions, to examine a number of factors, including: the lapse of time since the conviction, the rehabilitation or pardon of the person convicted, the gravity of the crime, and the degree to which the crime involved dishonesty or false statements.[5] A circuit court is also required under Wis. Stat. § 906.09(2) to determine whether the value of the evidence of a prior conviction is substantially outweighed by the danger of undue prejudice.

¶ 57. The issue on appeal is whether the circuit court exercised its discretion in accordance with the accepted legal standards and in accordance with the facts of record.

¶ 58. The majority opinion quotes and cites these rules, but speaks louder with its actions than with its

---

[4] Majority op., ¶ 23.

[5] These factors, initially set forth in the Judicial Council's Note accompanying Chapter 906, have long been relied on by courts in this state. *See, e.g., State v. Kuntz,* 160 Wis. 2d 722, 467 N.W.2d 531 (1991).

words. The majority opinion minimizes the import of a circuit court's obligation to consider the factors and engage in balancing in a number of ways.

¶ 59. First, the majority opinion tries to shift the inquiry from the actions (or inaction) of the circuit court to the actions of defense counsel and the alleged sparseness of her motion in limine.[6] In support of this proposition, the majority opinion cites *State v. Pharr,* 115 Wis. 2d 334, 340 N.W.2d 498 (1983). The *Pharr* court did not base its holding on defense counsel's failures. Rather, the court concluded that the record implicitly supported the circuit court court's exercise of discretion.[7]

¶ 60. Furthermore, in the present case defense counsel properly specified the nature of the prejudice. Of the four factors to be considered in evaluating the prejudicial effect of introducing a prior conviction, defense counsel articulated two of them: the lapse of time since the oldest three convictions and the lack of involvement of dishonesty or false statement in the

---

[6] Majority op., ¶ 24.

[7] *State v. Pharr,* 115 Wis. 2d 334, 340 N.W.2d 498 (1983), is significantly different from the case at bar. In *Pharr,* the circuit court individually evaluated two pieces of other crimes evidence and admitted one while excluding the other. No such process occurred in this case. The accused sought to exclude three prior convictions from being introduced at trial. The circuit court summarily responded to all three convictions without individually evaluating them. The implicit exercise of discretion present in *Pharr* did not occur in this case.

97

crimes.[8] Defense counsel was not remiss in her obligation to articulate the nature of the prejudice in this case.[9]

¶ 61. Second, the majority opinion minimizes the importance of a circuit court's responsibility to consider the relevant balancing factors. The majority opinion converts the requirement that circuit courts "should consider" these factors to the requirement that circuit courts "may consider" these factors.

¶ 62. Third, the majority opinion effectively neutralizes the need for circuit courts to exercise discretion by finding that the circuit court engaged in "implicit balancing" in this case. The majority opinion asserts that a circuit court need not invoke the "magic words" in

[8] The majority opinion correctly points out that the 1973 conviction for uttering is a crime that involves dishonesty. I agree that this very old conviction may have been admitted had the circuit court performed the proper analysis. However, since the circuit court did not distinguish between the three crimes in its brief analysis, this court is not in the position, as I discuss below, to make post hoc rationalizations as to why the circuit court did what it did.

[9] The majority opinion asserts that the defendant failed to respond to the prosecution's argument that the three convictions in the 1970s plus the two convictions in 1991 constituted a pattern and cites *Whitty v. State,* 34 Wis. 2d 278, 290, 149 N.W.2d 557 (1967) for the proposition that this court is unlikely to find prejudicial error when "no action was requested by counsel." *Whitty* is inapposite, however. In that case, the defendant complained that the circuit court erred in failing to instruct the jury to disregard certain foundation testimony *sua sponte.* Defendant's counsel failed to make any motion to so instruct the jury in that case. In the present case, defense counsel's motion did provide a sufficient trigger for the circuit court to engage in the balancing and consider the factors in making its determination.

order to demonstrate an exercise of discretion.[10] I agree. That the circuit court failed to use words like "weighing" and "balancing" is not dispositive.

¶ 63. Nevertheless, the record must demonstrate that the circuit court gave some consideration to the relevant factors. When the record shows that the circuit court did not consider the relevant factors, this court should not construct a record.

¶ 64. In this case, we have only the circuit court's one sentence: "But to the extent that there is I guess a presumption in the statute and the statute allows for prior convictions to be brought in because it does say something about the person's credibility, I will allow it." The circuit court never acknowledged any legal standard beyond the presumption of admissibility.

¶ 65. The majority opinion bolsters the paucity of the circuit court's explanation by noting that the district attorney prompted: "The consistent series of '73, '75, and '77, twice in '91, make it significant." Even if the majority opinion is correct that an appellate court could conclude that a circuit court adopted the reasoning expressed by the prosecutor,[11] the circuit court did not expressly agree with the prosecutor's arguments, and the district attorney's argument in this case provides precious little additional traction for the circuit court judge's thought processes.

¶ 66. Fourth, the majority opinion relies on the concept of "implicit balancing." I find it difficult to distinguish between implicit balancing and independent appellate review. Under the independent appellate review doctrine, when a circuit court "fails to set forth its reasoning in exercising its discretion to admit evi-

---

[10] Majority op., ¶ 26.

[11] *Id.,* ¶ 27.

dence, the appellate court should independently review the record to determine whether it provides a basis for the [circuit] court's exercise of discretion."[12] None of the cases cited by the majority opinion required an appellate court to engage in the extensive post hoc reconstruction that the majority opinion engages in to find an appropriate exercise of discretion in this case.

¶ 67. Fifth, the majority opinion's reasoning that the circuit court's issuance of the limiting instruction in this case demonstrated the exercise of discretion is unpersuasive. Although the court of appeals apparently found this argument persuasive in *State v. Johnson*, 121 Wis. 2d 237, 253–54, 358 N.W.2d 824 (Ct. App. 1984), I do not. A limiting instruction merely serves to exercise a check on how the jury uses a particular piece of evidence. It demonstrates a conclusion of the circuit court to admit the evidence, not the circuit court's reasoning why the evidence is admissible.

¶ 68. The majority opinion admonishes circuit courts that in the future "it would be prudent for circuit courts to explicitly set forth their reasoning in ruling on § 906.09(2) matters in order to demonstrate that they considered the relevant balancing factors applicable in the case before them."[13] As a practical matter, such a warning is futile because this case demonstrates that this court will consider the relevant balancing factors itself.

¶ 69. I conclude that the circuit court erred in failing to exercise its discretion in admitting the prior convictions. The presumption that prior convictions are relevant to the issue of a witness's credibility is a correct statement of law, but the circuit court did not consider

---

[12] *Pharr*, 115 Wis. 2d at 343.

[13] Majority op., ¶ 31.

the relevant factors and did not weigh the probative value of the three oldest convictions against the danger of unfair prejudice. I agree with the court of appeals that because there were no evidentiary proceedings and only very brief argument, the record provides no basis for me or this court to conclude that had the circuit court applied the correct legal standard, it would have reached the same result.

## II

¶ 70. I turn to whether the error in admitting evidence of the three oldest convictions was harmless. I must first state the facts. I agree with the majority opinion that this was a "he said, she said" case. There was no physical evidence and no witnesses to the crime.[14] The case turns on the credibility of the accused and the defendant. The defendant's case relied heavily on impeaching the credibility of the accuser, while the State focused on challenging the credibility of the defendant, primarily through his prior convictions. The State made the defendant's prior convictions an integral part of the credibility issue.

¶ 71. Evidence of this strategy is apparent in the State's brief closing argument, which raised the issue of the defendant's credibility three separate times and discussed his prior convictions twice:

> The defense is [sic] basically put into issue, the entire issue, of credibility; and the credibility of Dessa versus the credibility of the defendant who testified in this case . . . . First of all, you have to look in terms of everybody's credibility, including that of the defendant. You can take into consideration his interest, who has the ultimate interest to gain by a finding of not guilty.

---

[14] *Id.*, ¶ 7.

He does. He has the absolute ultimate greater interest. *Because of that you can take into consideration the fact that he had five prior convictions.* Use it only in terms of whether or not he is credible, not in terms of whether something else happened. It goes toward his credibility.

. . . .

But let's look at the credibility issue again. When you take into consideration, and the Judge will give you the various categories and things that you can consider, it includes the witness Gary [B.] as it does any other witness who testified in this trial, the position to know, their ability to recollect, bias, prejudice, if any is shown, and as I say the ultimate interest in this case comes from Gary [B]. He does not want 12 of you to go back there and say guilty.

. . . .

But you can look at credibility as well. He said that it didn't happen. *But look at his prior record* and look at his interest in the outcome of this case and he has the ultimate interest.[15]

¶ 72. Although the court has stated the harmless error test a number of ways, the court generally applies the *Chapman* test,[16] namely that an error is not harmless if it "contributed to the outcome of the trial."[17] An error is not harmless when it appears beyond a reasonable doubt that the error complained of "contributed to

[15] R. 18 at 73, 76, 87 (Transcript of Jury Trial, Sept. 20, 2000) (emphasis added).

[16] *Chapman v. California,* 386 U.S. 18 (1967).

[17] *State v. Vanmanivong,* 2003 WI 41, ¶ 43, 261 Wis. 2d 202, 661 N.W.2d 76.

the verdict obtained."[18] The harmless error test does not ask whether there is evidence in the record, apart from erroneously admitted evidence, that could support a conviction. The focus of the *Chapman* test is on whether the error might reasonably have contributed to the conviction. In other words the question is whether the defendant's testifying to five prior convictions instead of only two prior convictions contributed to the jury's verdict.

¶ 73. The court has posited several guidelines for assessing whether an error was harmless, including but not limited to the nature of the error, the frequency of the error, the nature of the state's case, the nature of the defense, the importance of the erroneously admitted or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence, whether the erroneously admitted evidence duplicates the untainted evidence, and the overall strength of the prosecution's case.[19]

---

[18] *Chapman,* 386 U.S. at 24; *State v. Carlson,* 2003 WI 40, ¶ 85, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting).

The State concludes that "the test for harmless error articulated in [*State v. Harvey,* 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189] is not substantively different from the court's prior articulation of the test, *i.e.,* 'whether there is a reasonable possibility that the error contributed to the conviction. A reasonable possibility is a possibility sufficient to undermine our confidence in the conviction.' *State v. Williams,* 2002 WI 58, 253 Wis. 2d 99, ¶ 50, 644 N.W.2d 919." Brief of Plaintiff-Respondent at 20.

[19] *State v. Norman,* 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97; *State v. Billings,* 110 Wis. 2d 661, 668–70, 329 N.W.2d 192 (1983).

¶ 74. Considering the nature of the error, the nature of the state's case, the nature of the defense, the importance of the erroneously admitted evidence to the prosecution and defense, and the overall strength of the prosecution's case, I conclude that the error was not harmless.

¶ 75. I part with the court of appeals and the concurring opinion on whether the error in admitting five prior convictions instead of two was, in their words, "outcome determinative."[20] They take the position that once a jury is apprised of a witness's past criminal convictions, evidence of the exact number of prior convictions is rarely "outcome determinative."[21] I conclude that the error contributed to the verdict.

¶ 76. The reason for allowing the jury to hear the number of convictions that a defendant has had without an explanation of what those offenses were is based on the notion that the number of convictions speaks to the credibility of the witness.[22] "The assumption is that the longer the criminal record, the less credible the individual."[23]

¶ 77. In Wisconsin, we have codified this "counting rule." The rule provides as follows:

> All prior criminal convictions, regardless of their nature, are potential fodder for the counting rule. Misdemeanors "count" as heavily as felonies. The crimes need

[20] *See State v. Gary M.B.*, 2003 WI App 72, ¶ 34, 261 Wis. 2d 811, 661 N.W.2d 435; concurring op., ¶ 40.

[21] *Id.*

[22] *State v. Midell,* 39 Wis. 2d 733, 738–39, 159 N.W.2d 614 (1968).

[23] *State v. Smith,* 203 Wis. 2d 288, 297–98, 553 N.W.2d 824 (Ct. App. 1996) (quoting 7 Daniel D. Blinka, *Wisconsin Practice: Evidence* § 609.1 at 311 (1991)).

not have any relevance to a person's character for truthfulness. The rule assumes that the longer the criminal record, the less credible the individual.[24]

¶ 78. In Wisconsin, we have concluded as a matter of law that the number of convictions, regardless of their type, is highly relevant to a witness' character for truthfulness. I agree with the defendant that

> [t]here is a logical disconnect between the presumption that a person who has five convictions is less credible that a person who has only been convicted twice, and the court of appeals' holding that the incremental difference between two convictions and five convictions is too insignificant to have swayed the jury's assessment of [the defendant's] credibility."[25]

I agree with Judge Dykman's dissent that "[t]o say that it doesn't matter whether a defendant answers [regarding his convictions] 'once,' 'nine times,' or '57 times' does not comport with the way ordinary people think."[26]

¶ 79. The curative instruction emphasizing that the prior convictions could be used only to determine the credibility of the defendant and not to decide whether the defendant committed the crime charged only exacerbated the prejudicial effect of admitting the five convictions into evidence. The significant issue in the case was the defendant's credibility, as the State emphasized in its closing statement. The circuit court

[24] 7 Daniel D. Blinka, *Wisconsin Practice: Evidence,* § 609.1 at 417 (2d ed. 2001); *State v. Smith,* 203 Wis. 2d 288, 297, 553 N.W.2d 824 (Ct. App. 1996).

[25] Brief and Appendix of Defendant-Appellant-Petitioner at 25.

[26] *State v. Gary M.B.,* 2003 WI App 72, ¶ 46, 261 Wis. 2d 811, 661 N.W.2d 435 (Dykman, J., dissenting).

emphasized that the convictions could be used to persuade them about the defendant's credibility.

¶ 80. The jury had a hard time with the case. The jurors deliberated for approximately three hours before announcing their inability to reach a unanimous verdict. The circuit court instructed them to continue deliberating. The jury then returned guilty verdicts.

¶ 81. Because the central issue in this case was the defendant's and accuser's credibility, because each conviction and the cumulative number of convictions bear on the defendant's character for truthfulness, and because the State stressed the prior convictions and the number thereof in closing argument, I cannot conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict. In asserting otherwise the court of appeals and the concurring opinion eviscerate the counting rule.

¶ 82. For the reasons set forth, I dissent.

¶ 83. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

¶ 84. DIANE S. SYKES, J. (dissenting). I agree with the conclusion of the Chief Justice and the court of appeals that there was error here. Prior to his own testimony, the defendant moved to exclude the use of three of his five prior convictions for impeachment purposes because they were too old (more than 20 years) and insufficiently related to dishonesty or false statements. The circuit court summarily denied the motion, invoking only the statutory presumption of admissibility, neglecting to apply the legal standard that governs the discretionary decision whether to exclude prior convictions for impeachment purposes under Wis. Stat. § 906.09(2).

¶ 85. As the court of appeals noted, Wis. Stat. § 906.09 "does not end with the 'general rule'" of presumptive admissibility. *State v. Gary M.B.,* 2003 WI App 72, ¶ 26, 261 Wis. 2d 811, 661 N.W.2d 435. Rather, it specifies that any presumptively admissible prior conviction nevertheless "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Wis. Stat. § 906.09(2). As the majority opinion and the Chief Justice's dissent note, this statutory exclusion represents a particularized application of the balancing test in Wis. Stat. § 904.03 and generally requires consideration of the following factors: 1) lapse of time since the conviction; 2) rehabilitation or pardon; 3) the gravity of the crime; and 4) the extent to which the crime involved dishonesty or false statements. Majority op., ¶ 21; Chief Justice Abrahamson's dissent, ¶ 56; *State v. Kuntz,* 160 Wis. 2d 722, 752, 467 N.W.2d 531 (1991); *State v. Kruzycki,* 192 Wis. 2d 509, 525, 531 N.W.2d 429 (Ct. App. 1995).

¶ 86. Here, the circuit court did not engage in any balancing of the probative value of the defendant's three older convictions against the danger of unfair prejudice, and did not address itself to any of the *Kuntz* factors. There is no record of any exercise of discretion at all, only the summary invocation of the statutory presumption of admissibility.

¶ 87. A sustainable exercise of discretion requires some record of the application of the correct legal standard to the decision at hand, regardless of whether the reviewing court would have made the same discretionary judgment call. *Kuntz,* 160 Wis. 2d at 745–46; *Kruzycki,* 192 Wis. 2d at 525. A misapplication of law or failure to apply the appropriate legal standard is an erroneous exercise of discretion, *Kruzycki,* 192 Wis. 2d at 525; here, the circuit court misapplied the law by

107

relying entirely on the statutory presumption, foregoing any analysis of the legal standard appropriate to the exclusion decision itself.

¶ 88. An incomplete or even incorrect application of the law to a discretionary evidentiary decision can sometimes be upheld by application of the independent review doctrine, *see State v. Hunt,* 2003 WI 81, ¶¶ 43–45, 263 Wis. 2d 1, 666 N.W.2d 771, but as the court of appeals noted, this record is insufficient to support the exercise. *Gary M.B.,* 261 Wis. 2d 811, ¶ 27. This is not just an omission of certain "magic words" associated with a decision—understandable sometimes given the press of business in circuit court and in any event usually not fatal because "magic words" are not required, as long as the record otherwise supports the decision reached.

¶ 89. I agree with the Chief Justice that a one-sentence reference to the presumption of admissibility is insufficient to support a conclusion that discretion was "implicitly" exercised here. Chief Justice Abrahamson's dissent, ¶ 64. I also agree with her conclusion that the *prosecutor's* reference to a "consistent series" of convictions cannot substitute for an actual on-the-record exercise of discretion by the circuit court, and the fact that the circuit court used a limiting instruction is not by itself enough to fill the gap left by the absence of any record of discretionary balancing. Chief Justice Abrahamson's dissent, ¶¶ 65–66. A reviewing court cannot undertake the missing discretionary balancing on behalf of the circuit court; we do not know what the circuit court might have decided had it undertaken to apply the appropriate legal standard to this important evidentiary decision.

¶ 90. Ultimately, I also agree with the Chief Justice's conclusion that the error at issue here was not

harmless. I write separately to emphasize that the presumption underlying Wisconsin's "counting rule" regarding prior convictions for impeachment purposes does not necessarily make every mistake of this sort harmful.

¶ 91. It is well-settled, as the majority and the Chief Justice note, that Wisconsin law presumes that persons who have been convicted of a crime are less credible than those who have not, and the longer the criminal record, the less credible the witness is presumed to be. Majority op., ¶¶ 21–23; Chief Justice Abrahamson's dissent, ¶¶ 76–77; *State v. Smith,* 203 Wis. 2d 288, 295, 297–98, 553 N.W.2d 824 (Ct. App. 1996); *Kruzycki,* 192 Wis. 2d at 524–25. That every additional conviction potentially "counts" on the credibility scale, however, does not mean that a circuit court error on the number of convictions admitted will usually or even often be harmful. The assessment of harmless error depends entirely upon an individualized application of harmless error analysis to the circumstances of the case.

¶ 92. Last term we synthesized the harmless error rule as follows:

To assess whether an error is harmless, we focus on the effect of the error on the jury's verdict. [*State v.*] *Harvey,* 2002 WI 93, 254 Wis. 2d 442, ¶ 44, 647 N.W.2d 189; *see also State v. Carlson,* 2003 WI 40, ¶ 87, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting). This test is " 'whether it appears " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " ' " *Harvey,* 2002 WI 93, 254 Wis. 2d 442, ¶ 44 (quoting *Neder* [*v. United States*], 527 U.S. at 15–16, quoting in turn *Chapman* [*v. California*], 386 U.S. at 24). We have held that "in order to conclude that an error 'did not contribute to the verdict' within the meaning of *Chapman,* a court must be able to conclude

'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Id.,* ¶ 48 n.14 (quoting *Neder,* 527 U.S. at 18). In other words, if it is "clear beyond a reasonable doubt that a rational jury would have convicted absent the error," then the error did not "contribute to the verdict." *Neder,* 527 U.S. at 15, 18 (citation omitted.)

*State v. Weed,* 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485.

¶ 93. Harmless error analysis begins with an evaluation of the nature of the error in question and the harm it is alleged to have caused, in order to determine whether it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Id.,* ¶ 30. The test for harmless error is not the same as the test for sufficiency of the evidence. *Id.,* ¶ 28. Neither does it necessarily turn on whether the specific error in question was by itself "outcome determinative," although an "outcome determinative" error would certainly qualify as harmful. Rather, the harmless error test evaluates the nature of the error and the manner and extent to which it can reasonably be said to have contributed to the verdict obtained. "[T]he focus is on the effect of the evidentiary or legal mistake on the case as a whole, presupposing a rational jury." *State v. Carlson,* 2003 WI 40, ¶ 87, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting). In contrast to an ineffective assistance of counsel claim, where the burden of showing prejudice is on the defendant, the burden of demonstrating an error's harmlessness is on the state as the beneficiary of the error. *State v. Harvey,* 2002 WI 93, ¶ 41, 254 Wis. 2d 442, 647 N.W.2d 189.

¶ 94. The error in this case is the circuit court's decision to admit the defendant's three criminal convictions from the 1970s for credibility impeachment pur-

poses, resulting in the placement before the jury of evidence of a criminal conviction record totaling five rather than two. Under the circumstances of this case, this was not an evidentiary decision of only minor significance.

¶ 95. That it was the defendant's criminal record rather than that of another witness is a substantial consideration. While all trials are credibility contests, this one was exclusively so. It was a delayed-report sexual molestation case with no physical or medical evidence and no other evidentiary corroboration of the victim's version of events. The defendant, the victim's stepfather, testified and denied the allegations. The verdict therefore depended completely upon the jury's evaluation of the credibility of the victim as against the credibility of the defendant. The victim's credibility was impeached with a number of prior inconsistent statements and by statements and letters to the defendant after moving to her grandmother's home after the death of her mother, in which she stated that she missed the defendant and wanted to live with him.

¶ 96. In closing argument, the prosecutor twice invited the jury to evaluate the defendant's credibility in light of his criminal record, the first reference highlighting the actual number of prior convictions ("you can take into consideration the fact that he has had five prior convictions"). Apart from the fact that the defendant's interest in the outcome of the case provided a built-in incentive to deny the allegations, the evidence of his five prior convictions was the only record evidence bearing upon his credibility. No prior inconsistent statements tending to undermine his credibility were admitted into evidence, nor was there any evidence of behaviors on his part tending to show a consciousness of guilt. The jury, of course, had no

111

information about the nature, seriousness, or age of the prior convictions; the only evidentiary basis upon which to evaluate the effect of the priors on the defendant's credibility was the number. Under these circumstances, the number of the defendant's prior convictions for credibility impeachment purposes took on heightened significance.

¶ 97. As the Chief Justice has noted, the jury had trouble with this case, and was very nearly hung. Chief Justice Abrahamson's dissent, ¶ 80. The case required an extremely difficult judgment about credibility. It may be true in many cases that once a jury knows that a witness has a criminal record, an erroneous overstatement of the number of prior convictions will present little difficulty for the reviewing court, such that it may conclude beyond a reasonable doubt that a rational jury would have convicted absent the error—that is, that the error did not contribute to the verdict obtained. For the foregoing reasons, however, I cannot reach that beyond-a-reasonable-doubt conclusion here, and therefore respectfully dissent.

¶ 98. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.